IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES WHITAKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil No. 15-cv-700-CJP**[1] |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff James Whitaker seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in February 2010, alleging disability beginning on March 14, 2006.   (Tr. 81).   After holding an evidentiary hearing, an ALJ denied the application in a written decision dated July 20, 2012.   (Tr. 81-91).   The Appeals Council granted review and remanded with directions to more thoroughly address the medical opinions.   (Tr. 19).   A different ALJ, Bradley L. Davis, held another hearing and again denied the decision on March 16, 2014.   (Tr. 19-29). The Appeals Council denied review, and the March 6, 2014, decision of the ALJ became the final agency decision.   (Tr. 1).   Administrative remedies have been

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c).   See, Doc. 13.

exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1.      The ALJ erred in considering the opinion of state agency consultant Vidya Madala, M.D.

2.      The ALJ played doctor in addressing the results of straight leg raising tests.

3.      The ALJ failed to more thoroughly address the medical opinions, as directed by the Appeals Council.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals

has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009.

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v.*

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Mr. Whitaker was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971).   In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). At the same time, while judicial review is deferential, it is not abject; this Court does

4

not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Davis followed the five-step analytical framework described above.   He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.   He was insured for DIB only through September 30, 2012.

The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine, status post lumbar surgery; status post right rotator cuff tear and surgery; and status post left shoulder arthroscopic surgery.   He further determined that plaintiff's impairments do not meet or equal a listed impairment.

The ALJ found that Mr. Whitaker had the residual functional capacity (RFC) to perform work at the light exertional level with some physical limitations.   Based on the testimony of a vocational expert, the ALJ concluded that Mr. Whitaker could not do his past work, but he was not disabled because he was able to do several jobs which exist in significant numbers in the local and national economies.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff.

### 1.   **Agency Forms**

Plaintiff was born in May 1974 was almost 32 years on the alleged date of

onset.  (Tr. 234).  He stated that he was unable to work because of a two level lumbar fusion, back pain, and lumber radiculopathy/sciatica.  (Tr. 238).  He was 6'1" tall and weighed 165 pounds.

Mr. Whitaker had worked as an iron worker from 1996 to 2006.   He worked as a boat mechanic for a few months in 2008, and worked in a family owned daycare center from September 2008 to May 2009.   (Tr. 270).

In a Function Report submitted in March 2010, plaintiff said that he spent much of his time watching television.  He alternated sitting, standing and lying down for comfort.  He lived with his wife and children.  He did a few chores such as loading the dishwasher and light cleaning that did not require bending.  (Tr. 257-266).

### 2.    Evidentiary Hearing

Mr. Whitaker was represented by an attorney at the evidentiary hearing before ALJ Davis on February 26, 2014.   (Tr. 37).

At the time of the hearing, plaintiff was living in a mobile home with his girlfriend.  (Tr. 39-40).  He testified that he did not do much on a typical day. He had to change positions often because of back pain.  He did not do any household chores.  (Tr. 42-43).

Plaintiff said he had to leave his job as a boat mechanic because it caused him pain in his back shooting down his right leg.   If he worked overhead, he had pain in his right shoulder.  (Tr. 40-41).  He had not sought medical treatment for a long time because he had been told there was not anything that could be done for his pain.  He used over-the-counter pain medications.  (Tr. 44-45).  He could not

afford to go to the doctor.   He had unsuccessfully applied for a medical card.   (Tr. 46).

Plaintiff had shoulder surgery in 1997 or 1998.   He did not have any more injuries to his shoulders after that.   However, he had more pain in his right shoulder than he did when he was working.   (Tr. 45-46).

A vocational expert (VE) also testified.   The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment, that is, a person of plaintiff's age and work history who was able to do work at the light exertional level, limited to only occasional stooping, kneeling, crouching, and crawling and only occasional overhead work bilaterally.   The VE testified that this person could not do plaintiff's past relevant work.   He could, however, do jobs that exist in significant numbers in the national economy.   Examples of such jobs are router, information clerk, and marker.   (Tr. 50-51).

### 3.    Medical Treatment

Mr. Whitaker saw Dr. William Sprich, a neurosurgeon, in June 2006 for back pain radiating down his left leg.   He had hurt his back at work.   A CT scan and MRI showed central bulge of the disc with probable annular tear at L4-5 and L5-S1. Dr. Sprich recommended conservative treatment at first.   (Tr. 366-367).   After an unsuccessful trial of conservative treatment, Dr. Sprich performed a discectomy with instrumentation and fusion at L4-5 and L5-S1 in September 2006.   (Tr. 352-357).

In December 2006, Dr. Sprich noted that plaintiff was having intermittent back pain, more at night.   There was good incorporation of the graft material, and

the fusions were solidly healed.   He had normal lordosis.   There was no sign of mechanical instability.   Dr. Sprich prescribed Flexeril and Sonata or Lexapro. (Tr. 362).

Plaintiff was seen by a nurse practitioner in Dr. Sprich's office in February 2007.   A CT scan showed solid fusion with no loosening or subluxation.   There was minimal disc bulging at L5-S1.   He had reached maximum medical improvement.   His restrictions were that he could not sit for longer than 35 to 45 minutes without stretching and could not lift more than 15 pounds.   He did not need to return to Dr. Sprich unless he had a new injury.   (Tr. 467-469).

Plaintiff returned to Dr. Sprich in January 2009 with complaints of residual discomfort in the right buttocks and leg.   On exam, he had some limitation of range of motion of the spine.   Straight leg raising was negative bilaterally at 60 degrees. He ordered spine films to make sure there was no mechanical instability.   (Tr. 361).   The x-rays showed normal spinal alignment and no significant changes with flexion and extension.   (Tr. 369).

Plaintiff complained to Dr. Wells, his primary care physician, of low back pain in September 2009.   (Tr. 389-391).   In October 2009, Dr. Wells noted he had a good range of motion of the shoulders.   (Tr. 388).

Dr. Wells saw plaintiff two or three times for unrelated complaints in 2011. (Tr. 609-614).

### 4.    RFC Assessment by Dr. Madala

In June 2010, Vidya Madala, M.D., assessed plaintiff's RFC.   Dr. Madala was acting as a state agency consultant and based her assessment on a review of the

file.   She concluded that plaintiff could do light work, limited to occasional postural activities (climbing, balancing, etc.), and occasional reaching in all directions including overhead.   The reaching limitation was "due to bilateral shoulder surgeries."   In her narrative remarks at the end of the report, she acknowledged that a recent musculoskeletal exam was normal and that plaintiff had a normal range of motion of the shoulders.   (Tr. 444-451).

A second state agency consultant agreed with Dr. Madala's assessment based on his own review of the records.   (Tr. 452-454).

**5.      Consultative Examination and RFC Assessment**

Alan Morris, M.D., performed a consultative examination at the request of the agency in May 2012 and assessed plaintiff's RFC. (Tr. 615-627).   Plaintiff's chief complaints were low back pain and prior bilateral shoulder surgery.   Plaintiff said his left shoulder felt fine, but his right shoulder had limited motion and was weaker than the left.   On exam, plaintiff walked slightly tilted to the left, but did not have a limp.   He stood with a flattened lumbar lordosis and a level pelvis.   Range of motion of the lumbar spine was restricted and he had pain particularly on extension.   Straight leg raising was positive in both the sitting and supine positions.   Plaintiff's shoulders were symmetrical with no muscle atrophy.   The range of motion of both shoulders was limited, with the right more limited than the left.

Among other limitations, Dr. Morris indicated that plaintiff could never reach overhead with his right arm and could only occasionally reach in all other directions with both arms.   (Tr. 620).

## Analysis

The Court agrees with plaintiff's assertion that ALJ Davis erred in weighing the medical opinions of the state agency consultants.

Both Dr. Madala and Dr. Morris concluded that plaintiff was limited to only occasional reaching in all directions with both arms.  In addition, Dr. Morris thought he was limited to no overhead reaching with his right arm.  Dr. Madala's assessment was based on a review of the evidence.  Dr. Morris's assessment was based on his examination of plaintiff.  Both doctors were acting as state agency consultants.

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  Social Security Ruling 96-6p, at 2.  An agency doctor is unlikely "to exaggerate an applicant's disability . . . as the applicant is not his patient and favoritism with applicants would not go down well with the agency."  *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013).   Nevertheless, the ALJ gave only "some weight" to Dr. Madala's opinion and gave "little weight" to Dr. Morris' opinion.   "[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step."  *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014).

No one asked the VE whether a person who was limited to only occasional reaching in all directions with both arms would be able to do the three jobs cited by

10

the VE. [2]   This Court is, obviously, not a vocational expert.   However, the *Dictionary of Occupational Titles* states that frequent reaching is required for all three jobs (Router, *DOT*#222.587-038; Information Clerk, *DOT* # 237.367-018; and Marker, *DOT* #209.587-034).   *DOT* job descriptions specify a frequency of reaching only in general; they do not specify a frequency of reaching overhead.

The medical opinions of state agency consultants, including nonexamining consultants such as Dr. Madala, are to be evaluated using the same criteria as other medical opinions.   20 C.F.R. §404.1527(e).   Thus, the ALJ was required to apply the factors set forth in §404.1527(c).

ALJ Davis did not give a good explanation for rejecting either doctor's opinion that plaintiff was limited to occasional reaching, at best.   He rejected Dr. Madala's opinion because he thought that Dr. Madala only examined plaintiff once, the reaching limitation was inconsistent with the objective evidence, "the lack of clinical signs with the exception of decreased range of motion on one occasion," the lack of treatment for the shoulders, and the fact that plaintiff was able to work as an ironworker for over ten years following his shoulder surgeries.   Similarly, he rejected Dr. Morris' opinion because Dr. Morris examined plaintiff only once, there was only one instance of decreased range of motion of the shoulders, exams showed full strength and muscle tone in the arms, there was no objective evidence of anatomical abnormality in the shoulders, and plaintiff testified that "there was no difference in his condition now than when he was working."   In addition, he again

---

[2]   The agency defines occasional as "occurring from very little up to one-third of the time."   Frequent is defined as "occurring from one-third to two-thirds of the time."   SSR 83-10, 1983 WL 31251, *5-6.

noted that plaintiff had worked at the heavy exertional level for "many years" after his shoulder surgeries and had no treatment for his shoulders during the relevant period.   (Tr. 26-27).[3]

Despite giving the above reasons for discounting the doctors' opinions, ALJ Davis concluded that plaintiff was limited to occasionally working overhead with both arms.[4]   Logically, factors such as lack of objective evidence regarding the shoulders, lack of clinical signs, lack of treatment, and ability to work at the heavy exertional level for years after his shoulder surgeries militate against assigning any shoulder limitation at all.   The ALJ never explained why he limited plaintiff to occasional overhead work instead of adopting the limitations assigned by the two state agency consultants.

Two different doctors, both retained by the agency, concluded that Mr. Whitaker was limited to, at most, only occasional reaching in all directions.   Based on his examination, Dr. Morris went further and limited plaintiff to no overhead reaching at all with the right arm.   Generally, the opinion of a doctor who has examined the claimant is to be afforded more weight than the opinion of a nonexamining doctor.   20 C.F.R. §404.1527(c)(1).   The ALJ gave no logical reason for rejecting the limitations assigned by the two state agency doctors and instead limiting plaintiff to occasional working overhead with both arms.   In effect,

---

[3] Defendant argues that plaintiff waived any argument regarding the weight afforded to Dr. Morris' opinion.   Doc. 19, pp. 4-5.   The Court disagrees.   Under his third point, plaintiff argued that the ALJ failed to thoroughly consider Dr. Morris' opinion.   In addition, at page 6 of his brief, plaintiff pointed out that "two experts paid by the Social Security Administration . . . determined that the claimant had limited reaching in all directions."   While a more detailed argument should have been presented, the Court cannot conclude that plaintiff waived any issue as to Dr. Morris' opinion.

[4] There was no exploration at the hearing of whether the limitation to only occasional overhead work conflicted with the DOT's description of the three jobs as requiring frequent reaching.

12

he overrode the doctors' opinions based on his lay opinion that there were not enough abnormal findings or treatment to warrant the restriction that the doctors recommended.   A conclusion that is not supported by any medical evidence "amounts to the ALJ improperly 'playing doctor.'" *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015), citing *Engstrand v. Colvin*, 788 F.3d 655, 660–61 (7th Cir. 2015); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); and *Pate–Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009).

In addition, the ALJ's reliance on lack of treatment is suspect.   Plaintiff testified that he could not afford to go to the doctor.   An ALJ must consider the reasons for a lack of treatment before concluding that the claimant did not seek treatment because he did not need it.   See, *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Garcia v. Colvin*, 741 F.3d 758, 761-762 (7th Cir. 2013).   The ALJ acknowledged this testimony, but observed that there was no evidence that plaintiff sought free or low-cost healthcare.   That observation is incorrect.   Plaintiff testified that he had applied for a medical card, but had been turned down.   (Tr. 46).   Applying for a medical card, i.e., Medicaid coverage, constitutes seeking free or low-cost healthcare.

Further, the ALJ mischaracterized plaintiff's testimony.   According to the ALJ, plaintiff "testified that there was no difference in his condition now than when he was working."   (Tr. 27).   Plaintiff actually testified that there was a difference with respect to his right shoulder.   He said "I mean my right one's starting – it hurts me a lot more now."   (Tr. 46).

The ALJ is "required to build a logical bridge from the evidence to his

13

conclusions." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). ALJ Davis simply failed to do so here. He did not give a good reason for rejecting the state agency consultants' opinions, and he mischaracterized plaintiff's testimony. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012)., citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Whitaker is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying James Whitaker's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: July 28, 2016.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**